**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2022[*]
Decided May 17, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-2714

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:79-cr-00007-TWP-MJD |
| BRETT C. KIMBERLIN, *Defendant-Appellant*. | Tanya Walton Pratt, *Chief Judge*. |

**O R D E R**

Almost 40 years after his conviction for felonies related to a series of bombings, Brett Kimberlin moved under 18 U.S.C. § 3600 to have DNA testing performed on hair evidence that was presented at his trial. The district court denied the motion,

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

concluding that the statute did not apply to Kimberlin because he no longer is in custody. We affirm.

Kimberlin was convicted in 1981 of possession of explosives in connection with eight bombs detonated in Speedway, Indiana. *See United States v. Kimberlin*, 805 F.2d 210, 215–16 (7th Cir. 1986). At trial, an expert witness presented microscopic hair analysis evidence that compared Kimberlin's hair to hair found on an explosive device. The expert concluded that the hairs likely had a common origin, though he could not confirm they were a match.

Kimberlin served out his sentence in 2001. In 2018, he moved under 18 U.S.C. § 3600(a) for DNA testing of the hair evidence presented at his trial. The government argued that the motion was untimely by at least nine years. *See* § 3600(a)(10)(A), (B) (as relevant here, motion presumptively timely only if brought within 60 months of the statute's enactment in 2004). Without elaboration, Kimberlin attributed his untimeliness to improvements in the reliability of DNA testing. The district judge sidestepped the matter of timeliness and ordered additional briefing in the hope, she said, of deciding the motion on the merits. The government later represented that it had searched for the hair evidence, could not locate it, and concluded that it likely had been destroyed in accordance with federal policy before the statute's enactment.

The judge denied Kimberlin's motion. In her view, the DNA testing provision of § 3600(a) applied only to defendants still in custody. Construing a provision in the Code of Federal Regulations, she concluded that § 3600(a) did not apply to defendants like Kimberlin who no longer were imprisoned. *See* 28 C.F.R. § 28.22(b)(3).

Kimberlin moved to reconsider the judge's ruling based on supplemental authority that, he believed, established his entitlement to DNA testing. But the judge also denied this motion, distinguishing the cited cases on grounds either that the defendants were still in custody when they sought DNA testing or that § 3600 was inapplicable because they were state prisoners.

On appeal, Kimberlin challenges the judge's conclusion that § 3600 does not apply to defendants who no longer are in custody. He contends that the statute itself does not contain such restrictive language. He also points to a 2015 Department of Justice letter regarding DNA testing that, he argues, authorizes judges to order testing of hair DNA evidence regardless of a defendant's incarceration status. *See* Letter from Assistant Att'y Gen. Peter J. Kadzik to Sen. Richard Blumenthal (Sept. 15, 2015).

The DNA testing provision of § 3600(a) does not explicitly address an applicant's custody status. That provision states only that it applies to individuals "sentenced to imprisonment or death pursuant to a conviction for a Federal offense."

The district judge approached this question by referring to a passage in the Code of Federal Regulations that, she wrote, "makes clear that § 3600(a) does not apply after a defendant is released from imprisonment." But the C.F.R. passage the judge relied upon invokes the similarly numbered 18 U.S.C. § 3600A:

> Inapplicability following release. The requirement of section 3600A to preserve biological evidence ceases to apply when the defendant or defendants are released following imprisonment, either unconditionally or under supervision. The requirement does not apply during any period following the release of the defendant or defendants from imprisonment, even if the defendant or defendants remain on supervised release or parole.

> 28 C.F.R. 28.22(b)(3).

We need not resolve the question how this interpretation of § 3600A interacts with § 3600(a)—both are part of the Innocence Protection Act of 2004—because another basis exists upon which this appeal may be decided—untimeliness. Even if we assume that a defendant who has served his sentence could be eligible for testing under § 3600(a), he still must meet the timeliness requirement set forth in § 3600(a)(10). *See United States v. Pitera*, 675 F.3d 122, 127–28 (2d Cir. 2012). Section 3600(a)(10)(B) creates a rebuttable presumption of untimeliness for motions made more than 36 months after conviction or more than 60 months after § 3600's enactment (i.e., October 30, 2009), whichever is later. To rebut that presumption, a defendant must show (1) that the delay was due to his mental incompetence; (2) that the evidence to be tested is "newly discovered DNA evidence"; (3) that denial of the motion would result in "manifest injustice"; or (4) that there was good cause for the delay. 18 U.S.C. § 3600(a)(10)(B)(i)–(iv).

Kimberlin has not rebutted the presumption of untimeliness. He does not assert, for instance, that he is incompetent or that the evidence to be tested is newly discovered. He suggests that he can show good cause for the delay based on "improvements" in DNA testing of hair, but he does not hint at why DNA testing was not adequate during the 60-month window in which his motion would have been

presumed timely. Relatedly, he proposes that denial of his motion would result in "manifest injustice" because a merits hearing could establish that the hair evidence presented at his trial was unreliable. But even if we assumed a favorable DNA test result, there is no suggestion that it would undermine Kimberlin's conviction, which we characterized as supported by "strong, albeit circumstantial" evidence. *Kimberlin*, 805 F.2d at 221.

Further, Kimberlin has not shown that the evidence he wishes to be tested is even in the government's possession, another requirement under § 3600(a). *See* 18 U.S.C. § 3600(a)(4). Nothing in the record calls into question the government's assertion that it was not able to locate the evidence, which was likely destroyed after Kimberlin exhausted his direct appeals in 1987, under the standard policy of the Bureau of Alcohol, Tobacco, and Firearms at the time.

We have considered Kimberlin's remaining arguments, and none has merit.

AFFIRMED